# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

      Plaintiff,  :  Case No. 3:11-cr-079
               Also Case No. 3:15-cv-044

               District Judge Timothy S. Black
- vs -            Magistrate Judge Michael R. Merz

KEITH A WATSON,

      Defendant.  :

## REPORT AND RECOMMENDATIONS

**Defendant's Original Motion to Vacate**

This case is before the Court on Defendant Keith Watson's Motion to Vacate pursuant to 28 U.S.C. § 2255 (ECF No. 137). As ordered by Judge Black, the United States has filed an Answer (ECF No. 140) and Watson has filed a Reply (ECF No. 141). The undersigned was added as the referred Magistrate Judge on May 23, 2016.[1]

In his Motion to Vacate, Watson pleads the following grounds for relief:

---

[1] Under General Order Day 13-01, ¶ 6, all post-conviction collateral attacks on criminal judgments are referred to the undersigned. The undersigned should therefore have been added to the case when the § 2255 Motion was filed January 2, 2015. Because this did not happen, the case was not brought to the undersigned's attention until May 2016.

1

**Ground One:** The Petitioner was deprived of his Sixth Amendment entitlement to the effective assistance of counsel in the pretrial, change of plea hearing, and sentencing hearing.

**Supporting Facts:** The petitioner always maintained his innocence to his court-appointed attorney - Aaron G. Durden. The matter was set for a jury trial on February 27, 2012 . On the morning of the scheduled trial date, the petitioner changed his plea to Guilty, because of the realization that his attorney was not prepared for the trial. In addition, defense counsel told the petitioner that prosecutors were unwilling to accept a guilty plea from co - defendant - Theron E. Lewis, unless the petitioner, also, pled guilty. Theron Lewis was willing to plead guilty because he was guilty, which prosecutors were aware of. Thus, a plea agreement was a package deal because the government knew that jurors would not return a verdict against Keith Watson if he were tried, alone. (Additional supporting facts and argument appear at PageID 1089-1100.

**Ground Two:** Petitioner was denied due process of law when he was indicted based on false testimony which prosecutors knew, or should have known, was false.

**Supporting Facts:** A state grand jury found probable cause lacking when it was requested to review the facts surrounding the robbery/murder for which the petitioner was charged in federal court.  No new evidence was uncovered by federal authorities following a return of "No True Bill" by a state grand jury.  The same witnesses were employed.  Thus, the only possible method that a federal grand jury could have found probable cause was if those same witnesses changed their respective grand jury testimony.

**Ground Three:** Petitioner was denied due process of law when the Court relied on false information to sentence him.

**Supporting Facts**: During proceedings in state court, and state grand jury, the victim and/or witnesses gave sworn testimony that the amount of money taken during the robbery was about $600.00, which represented proceeds of a Social Security check received

2

that month. That amount was raised to $5,200.00 during the petitioner's sentencing hearing. When two opposing sworn statements are given, the proponent must corroborate which is true and correct, or the evidence/testimony will be stricken as being unreliable and not credible. If the $5,200.00 represents the proceeds of drug sales, then restitution is not allowed since it is forfeitable due to its nature as contraband, or the sale of contraband. The district court did not comply with Fed. R. Crim. P. 32. which requires for a district court to address and resolve all objections registered by a defendant to the Pre-Sentence Report. (Additional supporting facts and argument appear at PageID 1104).

**Ground Four:** The failure to give the Petitioner credit for pre-trial detention is in violation of the Double Jeopardy Clause.

**Supporting Facts:** Federal authorities intentionally avoided charging the petitioner with the robbery/murder Hobbs Act violation until he was released from state prison. On January 25, 2010, the State of Ohio charged the petitioner with the robbery/murder, and served the arrest warrant on him. However, a "No True Bill" was returned on July 23, 2010. At that time the case was turned over to federal authorities, who then waited until June 3, 2011 (when petitioner was released from state prison) to arrest him on the indictment returned in federal court and for [sic] which the present petition is addressed. The petitioner is entitled to jail credit from January 25, 2010, as it violates the Double Jeopardy Clause not to give him credit.

(Motion, ECF No. 137.)

**Procedural History**

Watson was indicted with co-defendant Theron Lewis on May 25, 2011, for the robbery of a Dayton drug dealer and the murder which occurred as part of the crime (Indictment, ECF No. 4). Watson was appointed counsel, Attorney Aaron Durden, on the day of his initial

3

appearance (ECF No. 15). After an evidentiary hearing, Judge Black denied Watson's Motion to Suppress (ECF No. 59). A great deal of pre-trial activity took place between then and February 27, 2012, the date set for trial, when Watson entered into a Plea Agreement with the United States with an agreed sentencing range of ni ne to eleven years (ECF No. 102) and then pleaded guilty. Judge Black referred the case to the Probation Department which prepared a Pre-Sentence Investigation Report ("PSR"). On August 9, 2012, Judge Black sentenced Watson to 132 months imprisonment consecutive to his undischarged state term of imprisonment (Minutes, ECF No. 116; Judgment, ECF No. 120). Watson appealed to the Sixth Circuit which affirmed. *United States v. Watson*, 540 Fed. Appx. 512 (6th Cir. Oct. 4, 2013). The record does not reflect any petition for certiorari to the United States Supreme Court. Watson filed his § 2255 Motion January 2, 2015 (ECF No. 137).

## ANALYSIS

**Ground One: Ineffective Assistance of Counsel**

In his First Ground for Relief, Watson claims he received ineffective assistance from Aaron Durden, a member of the Criminal Justice Act panel for this Court who represented Watson by appointment from initial appearance through appeal.

The Court reads the Motion as making the following sub-claims against Mr. Durden: (1) He was not prepared for trial on the trial date; (2) Durden forced Watson to plead guilty because he failed to conduct meaningful pretrial investigation (including interviewing witnesses critical to the government's case, consulting expert witnesses on eyewitness identification, failing to

4

interview potential alibi witnesses or other persons charged with the same offense) or legal research; (3) failing to impeach the identification testimony of Brandy Hurston; (4) failing to issue a subpoena for Roderick Cothran; (5) failure to object to Judge Black's failure to rule on Watson's objections to the PSR.

Upon a finding that, by claiming ineffective assistance of counsel, Watson had waived attorney-client privilege and work product protection for his communications with Durden, Judge Black permitted the United States Attorney to interview Durden. The result is Durden's Affidavit attached to the Government's Answer (ECF No. 140-1, PageID 1141-60.) Durden makes the following pertinent averments:

(1) He did not force or pressure Watson to plead guilty, but did advise him that it was in his best interests to do so; Watson made the decisions not to testify in his own behalf and to accept the Plea Agreement.

(2) He was prepared for trial and extensively litigated the case pre-trial. He attempted to interview all critical witnesses and obtained a budget from the Court for an eyewitness identification expert.

(3) He considered subpoenaing Roderick Cothran, but found Cothran had nothing helpful or relevant to testify to.

(4) He considered all possible uses of the prior state grand jury proceedings and in fact obtained, by court order, a copy of the grand jury transcript and used it in the suppression hearings.

(5) He attempted to interview all possible alibi witnesses identified to him by Watson.

(5) "At Mr. Watson's request, [he] aggressively negotiated a plea agreement with the prosecutor."

(6) He thoroughly reviewed the PSR. He had no objections to it, but avers he zealously advocated for Watson at sentencing.

Watson's Reply claims Durden was unprepared, but he fails to rebut Durden's claims to having interviewed witnesses, filed appropriate motions, and generally to be prepared for trial. Watson claims Durden coaxed him to plead by arguing he would spend the rest of his life in prison if he did not take the plea deal. Had Watson been convicted on the three charges against him, life imprisonment was not an unlikely consequence since the advisory guidelines would have been 360 months to life imprisonment. "Coaxing" is consistent with Durden's Affidavit about his advice; it does not amount to duress or coercion.

The Plea Agreement negotiated in this case by Durden on Watson's behalf required Watson to plead guilty to the Hobbs' Act charge in Count 2 with the remaining charges to be dismissed, with reservation of the right to appeal the adverse suppression decision (and withdraw the guilty plea if that decision was reversed), and with a binding agreed sentencing range of 108 to 132 months (ECF No. 102). Watson represented to the Court that

> 9. By signing this agreement, the defendant acknowledges that he has read this agreement, that he has carefully discussed the terms of this agreement with his attorney, and that he understands and accepts those terms voluntarily, without duress or coercion, and of his own free will. Defendant further agrees that he is satisfied with the representation of his attorney in this matter.

*Id.* at PageID 931. Before accepting the guilty plea and the Plea Agreement, Judge Black engaged in the plea colloquy required by Fed. R. Crim. P. 11 which was transcribed (Transcript, ECF No. 127). Watson was sworn and responded to Juddge Black's questions during the colloquy under oath. *Id.* at PageID 998. Watson first pled guilty at PageID 1000. Watson conceded his attorney was "fully informed about the facts and circumstances upon which this

6

charge is based" and that he was "fully satisfied with [his] lawyer's advice and representation." *Id.* at PageID 1008. Watson agreed that his plea was his "own free and voluntary act." *Id.* at PageID 1009. Watson admitted that he had signed the Statement of Facts and that its contents were true. *Id.* at PageID 1012. He then again admitted that he was in fact guilty of the offense charged. *Id.* Nowhere in the plea colloquy did Watson claim or hint at any claim he was actually innocent or that Durden coerced him to plead guilty.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the

7

>   presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

>   The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).

Watson's claims of ineffective assistance of counsel against Durden fail utterly to satisfy the *Strickland* standard. He has not rebutted Durden's claims of extensive pre-trial preparation and the docket corroborates Durden's claims of vigorous litigation. There is no hint of any claim of innocence at the time the plea was taken. Watson's best hope was to have the eyewitness identification suppressed and he reserved his right to test Judge Black's decision on that point on appeal. In addition, Durden negotiated a binding sentencing range of nine to eleven years, half of the statutory maximum, which was itself much less than the Sentencing Guidelines would have provided if Watson had been convicted as charged. Watson has not come forward with any evidence from potential alibi witnesses. He relies on Cothran's post-appeal Affidavit, but Durden interviewed Cothran pre-trial and found at that time he had nothing relevant or helpful to testify to.

Finally, there were no formal filed objections to the PSR at the time of sentencing. Mr. Durden made an argument for sentencing at the low end of the agreed range. On the morning of sentencing, Watson handed a document of objections to the PSR to Judge Black which was then handed back to him after Judge Black read them (Transcript, ECF No. 133, PageID 1072).

Those objections were not made an exhibit, but Watson has filed them with his Reply at PageID 1174-76.  The allegations made in that document are purely conclusory – they do not state what is erroneous, misleading, prejudicial, untrue, etc. in the PSR, nor do they state what Watson alleges would be the truth.  While Judge Black accepted them as part of Watson's allocution, they do not present objections to the PSR which Durden should have filed on Watson's behalf or which Judge Black was obliged to resolved under Fed. R. Crim. P,.  32..

A plea of guilty or no contest is valid if, but only if, it is entered voluntarily and intelligently, as determined by the totality of the circumstances.  *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984).  The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case.  *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970).  In order for a guilty plea to be constitutional, it must be knowing, intelligent, voluntary, and done with sufficient awareness of the relevant circumstances and likely consequences. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The identical standard applies to a plea of no contest or nolo contendere. *See Fautenberry v. Mitchell*, 515 F.3d 614, 636–37 (6th Cir. 2008).  The defendant must also be aware of the maximum

sentence that can be imposed for the crime for which he is pleading. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).

The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397U.S. at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).  A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows, as it does here, that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to any findings of fact and to the judgment itself. *Id.* at 326–27.

When a defendant has solemnly sworn under oath that his plea is voluntary and that he is in fact guilty, he cannot simply turn those sworn statements on their head after an unsuccessful appeal and expect his new position to allow for a re-trial of the case.

Watson's First Ground for Relief should be dismissed with prejudice.


**Ground Two:   Prosecutorial Misconduct:   Indictment on the Basis of Known False Testimony**

In his Second Ground for Relief, Watson argues the federal prosecutors presented known false testimony to the federal grand jury to obtain an indictment in this case.  He attempts to prove this point by noting that the same witnesses appeared before the Montgomery County Grand Jury which failed to indict.

It is of course a violation of the Due Process Clause of the Fifth Amendment for a prosecutor to present testimony known to be false. *Workman v. Bell*, 178 F.3d 759, 766 (6th Cir. 1998), *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959).  However, to prevail on such a claim, a petitioner must show that the statement in question was false, that the prosecution knew it was false, and that it was material. *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012), *citing Rosenkrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010); *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989); *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986).  The statement must be indisputably false, rather than simply misleading. *Lochmondy*, 890 F.2d at 823; *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000).

Watson offers no proof that any testimony presented to the federal grand jury was false, much less that the United States Attorney's Office knew it was false.  All we know is that one grand jury failed to indict and one returned an indictment.  It may be that precisely the same testimony was found persuasive by the federal grand jury but not persuasive to the county grand jury.  Or it may be that one or more witnesses failed to remember significant facts before the county grand jury which they remembered when the testified before the federal grand jury. Watson does not even aver what federal grand jury testimony he alleges was false and, just as important, known to be false to the federal prosecutors.  The mere difference in result will not support a finding of a *Napue* violation.

The Government's Answer presents additional defenses to this Second Ground for Relief. First of all, Watson does not know what evidence was presented to the federal grand jury because the secrecy of those proceedings has not been pierced and he is therefore not privy to that testimony.  Secondly, the elements of the state crimes which were presented to the county

11

grand jury are different from the elements of the federal crimes on which Watson was indicted, so different evidence would be relevant. Finally, this is a claim which could have been raised on direct appeal and was not. It is therefore procedurally defaulted. *United States v. Frady*, 456 U.S. 152 (1982).

**Ground Three:  Due Process:  Sentence Based on False Information**

In his Third Ground for Relief, Watson alleges he was sentenced on the basis of false information in that testimony in state court was that $600 was taken in the robbery/murder, but $5,200 turned up as the amount of recommended restitution in the PSR and was adopted by Judge Black. The latter amount would not be allowable as restitution, he continues, if it were proceeds of drug trafficking in the hands of the victims.

This claim is without merit for a number of reasons. First of all, Watson stipulated in the Statement of Facts that $5,200 was stolen from the victims (ECF No. 102). Secondly, any claim about the amount of restitution was available on direct appeal but was not raised and is therefore procedurally default. *Frady, supra*. Watson's so-called objections which were read as part of his allocution contain no objection on their face to the amount of restitution recommended in the PSR.

In the supporting facts on this Ground for Relief, Watson claims Judge Black did not properly assess his minor role in the offense, relying on *Rosemond v. United States*, 134 S. Ct. 1240 (2014). In that case the Supreme Court held a person charged as an aider and abettor under 18 U.S.C. § 924(c) could be convicted only if the government proved he knew in advance that

12

one of his cohorts would be armed. *Rosemond*, even assuming it applies retroactively, does not apply here because Watson was not convicted under § 924(c).

Watson finally argues that in sentencing Judge Black should have taken into account the "planned testimony of an expert identification witness who would have challenged the planned testimony of Brandy Hurston, who, according to discovery, would have identified Keith Watson as being one of the perpetrators . . ." (Motion, ECF No. 137, PageID 1104). Watson offers no authority for requiring a judge to take into account at sentencing on a guilty plea the expected testimony of someone who never testified. Certainly it is not a violation of a defendant's constitutional rights to fail to do so.

Ground Three should be dismissed with prejudice.

**Ground Four: Double Jeopardy**

Watson was arrested by state authorities on state charges arising out of the robbery/murder on January 25, 2010. He was released from state custody when the county grand jury declined to indict on July 23, 2010. He claims the "case was turned over to federal authorities" at that time, but they waited until June 3, 2011, to arrest him when he was released from state prison on other charges. He claims he is entitled under the Double Jeopardy Clause to jail time credit on his federal sentence from the date of the initial state arrest (Motion, ECF No. 137, PageID 1105.)

First of all, this claim is procedurally defaulted because it was available to be raised on direct appeal but was not.

Second, the claim has never had any merit. Under the dual sovereignty doctrine, the federal government and a state may separately prosecute a defendant for the same criminal conduct. *United States v. Mardis*, 600 F.3d 693, 696 (6th Cir. 2010). In other words, the Double Jeopardy Clause does not apply to separate criminal prosecutions by the state and federal governments. Watson is only entitled by statute to jail time credit for time served in federal custody before trial on the same charges. The docket conclusively reflects that Watson came into federal custody only on June 7, 2011 (ECF No. 10).

Ground Four is without merit and should be dismissed with prejudice.

**Defendant's Recent Motions**

In addition to his original Motion to Vacate, Watson has filed three informal letter motions: (1) a challenge to the subject matter jurisdiction of the Court (docketed as Motion for Relief from Judgment/Sentence, ECF No. 144, filed April 6, 2016), (2) an Omnibus Motion (ECF No. 145, filed April 25, 2016), and (3) a Notice (ECF No. 146, filed May 11, 2016). These will be dealt with *seriatim*.

In the first of these letter motions, Watson complains that the Judgment in this case shows he was convicted of violating 18 U.S.C. § 1951(a) and § 2, whereas the Plea Agreement only called for him to plead guilty to Count 2, the Hobbs Act violation.

The Magistrate Judge finds there has been no violation of the Plea Agreement because 18 U.S.C. § 2 does not codify any criminal offense. Instead, it provides that persons who aid or abet offenses against the United States are punishable as principals. Adding such language to the Judgment is common practice in a case involving, as this one did, two or more people engaged in

committing the same criminal act. 18 U.S.C. § 2 is included in Count Two of the Indictment (ECF No. 4, PageID 13, 14, 15) and Watson agreed to plead guilty to that count as charged. Watson's claim that this somehow destroys District Court jurisdiction or gives him the power to withdraw from the Plea Agreement is completely without merit.

The filing docketed at ECF No. 145 contains a number of different requests to the Court. PageID 1188-89 claim that somehow ECF No. 140-1 and 140-2 show Mr. Durden had an actual conflict of interest and committed "fraud upon the court, his fraud upon his client, his own violation of the Criminal Justice Act (CJA) all for his own person [sic] monetary gain." (PageID 1188). This is somehow said to be proved by Mr. Durden's using the services of a paralegal James Carr, Sr., without paying for them himself or seeking reimbursement under the CJA. This is in turn said to show Durden is a criminal and "conflicted criminal fraudster." *Id.* The Magistrate Judge simply does not understand how these exhibits show or are even thought by Watson to show a conflict of interest between himself and Mr. Durden.

The second part of ECF No. 145 purports to be a Discovery Motion under Rule 6 of the Rules Governing § 2255 Motions, Fed. R. Civ. P. 81 and fed. R. Crim. P. 16 (PageID 1190). The latter two rules do not apply to § 2255 proceedings because § 2255 has its own discovery rule, Rule 6. In order to obtain discovery under Rule 6, a defendant must show good cause. In attempting to show good cause, Watson asserts "that his case involves several outside the trial record issues that trial counsel did not pursue despite his requests to do so. Indeed, it is far from clear that the police-prosecution team exercised due diligence in its own investigation of these issues before presenting one of them as grounds for convicting the petitioner and sentencing to life imprisonment[2]." *Id.*

---

[2] Watson was sentenced to eleven years imprisonment, not life.

This is not the showing of good cause required by Rule 6. There is no trial record because Watson pleaded guilty. In any event, discovery under Rule 6 would not be available to show a prosecutor did not exercise due diligence because a criminal defendant has no constitutional right to have a prosecutor exercise "due diligence." Watson's Motion for Discovery is DENIED.

The third part of ECF No. 145 seeks an evidentiary hearing. The motion contains a long disquisition on the differences between evidentiary hearings in cases under 28 U.S.C. § 2254 and under § 2255. When this argument is distilled to what is relevant to this case, Watson claims there are two disputed questions of material fact: "the affidavit of Roderick Cothran and the certified fact in the foregoing motion as to the actual conflict of interest of CJA appointed attorney Durden." *Id.* at PageID 1195. As pointed out above, the Court simply does not understand the supposed conflict of interest.

As to the Cothran Affidavit, it is literally riddled with hearsay, much of which indicates no source. Cothran does aver that he met with Durden, told him of a police officer's conduct in trying to get Cothran to identify Watson, and that "Watson was not involved in the robbery, because I am very familiar with him, and his voice, and that he was not present at the robbery." (ECF No. 135-1, PageID 1081). This does not create a material question of fact. Durden's Affiudavit confirms that he met with Cothran and evaluated his potential testimony, but found it would not be helpful. A judgment not to call a particular witness is well within the sound professional discretion of a trial attorney. What Cothran's Affidavit does not show are any of the facts which would certainly be brought out on cross-examination: What was Cothran doing in this dope house when it was robbed? How did he know Watson, given that he avers that

> The Watson boys were from another neighborhood (Dayton View) than the one where the robbery/murder occurred (Otterbein).

16

> Those two neighborhoods were competitors, and bad blood existed between them, as is demonstrated that [sic] killings have occurred between them due to the conflict.

*Id.* at PageID 1080.  Cothran also claims the other persons present knew Watson and would have identified him if he had been there.  This testimony, had it been given at trial, would have bolstered the identification made by the witness who was there.

Watson asks the Court to find a material conflict raised by this Affidavit in a context where he pleaded guilty without any suggestion he believed he was innocent and in the process admitted being present at the crime.

The Magistrate Judge finds no material question of fact requiring an evidentiary hearing.

The third letter filing (ECF No. 146) purports to show further evidence of Mr. Durden's asserted conflict of interest.  The attachment is a purported letter from James C. Carr, Sr., of Independent Para Legal Consulting Services to Judy Sammons, Watson's mother, offering his evaluation of the case and acknowledging payment of $1,200 toward a total bill of $3,500 for Mr. Carr's services.  The Magistrate Judge fails to see how this somehow proves Mr. Durden had a conflict of interest.  If Watson was relying on Carr's evaluation to show the Government's case is weak, he would have been better advised to rely, as he eventually did, on Durden's evaluation.  In Case No. 3:90-cr-011  Carr was convicted and sentenced to five years imprisonment in this Court for bank fraud.  In Case No. 3:04-cr-030 he was again convicted in this Court of bank fraud.  The Court knows nothing of any other criminal convictions he may or may not have, but his fraud convictions in this court do nothing to qualify him as a credible participant in Watson's case.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Motion to Vacate be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

May 31, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).