# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

|  |  |  |  |
|---|---|---|---|
| | Plaintiff, | : | Case No. 3:11-cr-079 |
| | | | Also Case No. 3:15-cv-044 |
| | | | |
| | | | District Judge Timothy S. Black |
| - vs - | | | Magistrate Judge Michael R. Merz |

KEITH A. WATSON,

|  |  |  |
|---|---|---|
| | Defendant. | : |

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This criminal case is before the Court on Defendant Keith Watson's Objections (ECF No. 162) to the Magistrate Judge's Report and Recommendations (ECF No. 148) recommending that Watson's Motion to Vacate under 28 U.S.C. § 2255 be dismissed with prejudice.  Judge Black has recommitted the case for reconsideration in light of the Objections (Recommittal Order, ECF No. 165).  The United States has declined to respond to the Objections and concurs with the Report (Notice, ECF No. 167).

In his Motion to Vacate, Watson pleads four grounds for relief which are quoted verbatim in the Report (ECF No. 148 at PageID 1234-35).  The Report is organized around those four grounds for relief and additional motions Watson filed before the Report was completed.  The Objections do not follow the structure of the Report.  This Supplemental Report will, however,

1

follow the structure of the original Report, referencing those portions to the Objections as they are relevant to Grounds for Relief.

**Ground One:  Ineffective Assistance of Counsel**

In his First Ground for Relief, Watson claimed he received ineffective assistance of trial counsel from Aaron Durden, a member of the CJA Panel appointed to represent him.  The Report analyzed the Motion by breaking this into five sub-claims and found each of them to be without merit, either for failure to show deficient performance, failure to show prejudice, or both (Report, ECF No. 148, PageID 1236-42).

At the outset of his Objections, Watson claims Durden has not turned over to Watson all the documents Watson believes he is entitled to under the Ohio Rules of Professional Conduct and without them he cannot properly prosecute his case, resulting in rendering § 2255 inadequate as a remedy (Objections, ECF No. 162, PageID 1298).  The Court is unaware, and Watson does not describe in his Objections, what documents he does not have from Durden that he needs to prosecute his case.

Having written this, Watson spends the next five pages (PageID 1299-1303) discussing 18 U.S.C. § 2.  These objections will be discussed *infra* under Aiding and Abetting, 18 U.S.C. § 2.

——.

In Section VII of the Objections, Watson discusses the Sixth Amendment right to effective assistance of counsel.  This portion of the Objections discusses the general law on the subject, *Strickland v. Washington,* 466 U.S. 668 (1984); *United States v. Cronic,* 466 U.S. 648

(1984); *Cuyler v. Sullivan,* 446 U.S. 335 (1980); and others (ECF No. 162, PageID 1304-05). Nowhere in this section does Watson discuss the Report's findings of the ineffective assistance claims in this case.  Watson does not even say whether he believes the Magistrate Judge's reading of his sub-claims is correct, much less offer any argument about why the Report's analysis of the sub-claims is objectionable.

In Section VIII, Watson reports his claim that Mr. Durden had a conflict of interest (and therefore did not provide effective assistance) because Durden insisted Watson's family hire a particular paralegal and then billed the United States for the same paralegal.  This, he says, constituted the crime of fraud and made Durden "actually conflicted."  (ECF No. 162, ECF No. 1305.)  He directs the Court to Mr. Durden's CJA voucher in the case (ECF No. 140-2, PageID 1144-60) which he says shows an attempt to bill the United States for the paralegal's services. He cites PageID 1152 as the page on which such billing supposedly is shown but it is not there

In the Report, the Magistrate Judge confessed his inability to understand this conflict of interest argument (Report, ECF No. 148, PageID 1247).  In response, Watson instructs the Magistrate Judge to read Doc. No. 126.  That is a letter that has nothing to do with Keith Watson. It is a letter to Robert Barnhart, an attorney being appointed to represent Theron Lewis, the co-defendant in this case, on his appeal.  It contains a general warning presumably contained in all such letters of appointment and says nothing specific about Watson's case:

> Second, there are companies which claim expertise in federal criminal and post-conviction law and which aggressively market their services directly to inmates. Their marketing materials promise litigants that they may hire these companies, using private funds, to assist court-appointed counsel in developing their appellate strategy and preparing motions and briefs for the court of appeals. **THESE REPRESENTATIONS ARE MISLEADING AND CAN RAISE SERIOUS ISSUES FOR COURT-APPOINTED COUNSEL AS WELL AS FOR THE**

> LITIGANT. If a litigant has private funds available, whether from family or otherwise, to hire a research company, his or her entitlement to the services of counsel or the provision of transcript at government expense is placed in jeopardy. If appointed counsel assists a client in misrepresenting indigency to the court, or knowingly allows such a misrepresentation to occur, he or she is likely to have violated one or more provisions of the Code of Professional Responsibility. If you should become aware that your client has financial resources not previously disclosed to the court, you should contact the Clerk or Chief Deputy Clerk immediately for guidance.

(ECF No. 126, PageID 984.)  The Magistrate Judge still does not understand how the hiring of a paralegal with private funds, even if Mr. Durden insisted on it, involves some sort of conflict of interest which would entitle Watson to have his conviction set aside.

In Section XI of the Objections, Watson returns to the ineffective assistance of trial counsel claims.  After four more paragraphs of general effective assistance law, Watson inserts seventeen paragraphs (a through r) of supposedly undisputed facts which Watson says he "certified."[1]  (ECF No. 162, PageID 1307-09.)  It is difficult to know what to make of this potpourri of assertions.  Most of them are combined assertions of fact and arguments of law. Most if not all of the assertions about Watson's conversations with Durden are directly contradicted by Durden's affidavit.  Some of them attempt to raise entirely new claims, e.g., that Durden provided ineffective assistance of appellate counsel. *Id*. at PageID 1309, ¶ q.  Watson apparently has a theory that there was an alternative suspect who Durden's investigator, Mark Smith, wanted to investigate but Durden would not allow it. *Id*. at PageID 1308, ¶¶ i-m.  Where was this assertion made anywhere before in this case?

---

[1] Presumably the certification referred to is the certification under penalty of perjury that appears at PageID 1314.

Finally, Watson does not respond to the point made in the Report that he never claimed during the plea colloquy that he was actually innocent or that Durden coerced him to plead guilty (ECF No. 148, PageID 1239).

Objections to a Report and Recommendations are not the proper place to raise wholly new legal claims supported by entirely new, uncorroborated, evidence.

In Section XII[2] (PageID 1310-11) Watson cites more general law about ineffective assistance of counsel without relating it in any way to the specifics of this case. In Section XIII, Watson accuses Durden of "conspiracy to commit torture, torture itself, acquiescence to torture," etc. All of these accusations are based on facts known to Watson at the time he pleaded guilty in open court, admitted the truth of the Statement of Facts, and told the Court he was satisfied with Mr. Durden's performance. He should be held to his guilty plea statements. The First Ground for Relief should therefore be dismissed with prejudice.

**Ground Two: Prosecutorial Misconduct: Indictment on the Basis of Known False Testimony**

In his Second Ground for Relief, Watson argues the federal prosecutors presented known false testimony to the federal grand jury to obtain an indictment in this case. He attempts to prove this point by noting that the same witnesses appeared before the Montgomery County Grand Jury which failed to indict.

The Report concluded this Ground for Relief should be dismissed with prejudice because Watson had proven neither that any testimony given to the grand jury was false nor that the federal prosecutors knew it was false, the key elements of a violation of *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

---

[2] There are two section XII's, one beginning on PageID 1310 and one on 1311.

In Section IX of his Objections (ECF No. 162, PageID 1305-06), Watson merely repeats general propositions of law and offers nothing to refute the Report's analysis on this claim.  In Section X (PageID 1307), Watson states:

> On information and belief, the full prosecution team, all members, knew and know now that Officers Gregory Galer and Dennis Murphy did instruct Brandy Hurston to identify the undersigned in the photo line-up identification and coerced her into said identification of the undersigned and the coinciding testimony at the pretrial suppression hearing before this court.

This is a new claim.  Ground Two in the Motion speaks of the (unproven) differences between the state grand jury testimony and the federal grand jury testimony (Motion, ECF No. 137, PageID 1101).  Moreover, Watson knew of this alleged perjury at the time he pled guilty but did not raise it then or make any protestation of innocence.  Nor did he raise it on appeal.  Ground Two should be dismissed with prejudice.

**Ground Three:  Due Process:  Sentence Based on False Information**

**Ground Four:  Double Jeopardy**

The Report recommended dismissing both of these claims with prejudice (ECF No. 148, PageID 1244-46).  Watson makes no objection.

**Aiding and Abetting, 18 U.S.C. § 2**

In an informal letter motion filed April 6, 2016 (ECF No. 144), Watson complained that the Judgment in this case shows he was convicted of violating both 18 U.S.C. § 1951 and § 2, whereas the Plea Agreement only called for him to plead guilty to Count 2, the Hobbs Act violation (ECF No. 144).  The Report's entire discussion of this point is as follows:

6

> The Magistrate Judge finds there has been no violation of the Plea Agreement because 18 U.S.C. § 2 does not codify any criminal offense. Instead, it provides that persons who aid or abet offenses against the United States are punishable as principals. Adding such language to the Judgment is common practice in a case involving, as this one did, two or more people engaged in committing the same criminal act. 18 U.S.C. § 2 is included in Count Two of the Indictment (ECF No. 4, PageID 13, 14, 15) and Watson agreed to plead guilty to that count as charged. Watson's claim that this somehow destroys District Court jurisdiction or gives him the power to withdraw from the Plea Agreement is completely without merit.

(ECF No. 148, PageID 1246-47.)  Watson's response to that single paragraph consumes more than seven single-spaced[3] pages of his Objections.

Watson begins this portion of the Objections by arguing

> [T]he entire report and recommendations Dk. 148 should be stricken from the record.  The fact that the magistrate does not even know that Title 18 U.S.C. §§ 2(a) and 2(b) are substantive offenses is reason alone to strike his report.  The metaphorical question being, how can one so blind be expected to see anything, especially the truth?

(ECF No. 162, PageID 1298).   The Magistrate Judge believes Watson means "rhetorical" question.

Watson's original Motion raising this issue was purportedly brought under 28 U.S.C. § 2255(f)(4)(See ECF No. 144, PageID 1179).    Watson claims it was a breach of his Plea Agreement to include 18 U.S.C. § 2 in the Judgment and that as the injured party he has the right "to withdraw from the breached contract and terminate the plea, immediately."  He also claims that "no court has authority to 'adjudicate guilty' or for that matter add 'offenses' to a J&C after

---

[3] Among other formal requirements from which Watson apparently believes he is exempt under *Haines v. Kerner, supra,* is the requirement that filings be double-spaced.  S. D. Ohio Civ. R. 5.1(a)

sentencing which were never contemplated by the plea/contract and more so, not even mentioned at the sentencing hearing." *Id.* at PageID 1180.

Watson relies on *Rosemond v. United States,* 134 S. Ct. 1240, 188 L. Ed. 2d 248 (2014). Rosemond had been charged with using a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c) or, in the alternative, aiding and abetting that offense under 18 U.S.C. § 2. The Tenth Circuit had upheld a jury instruction which permitted conviction under § 2 if Rosemond knew his accomplice used a firearm, but the Supreme Court held the government had to prove Rosemond knew about the firearm in advance of the crime.

Justice Kagan explained aider and abettor liability under § 2(a) as follows:

> The federal aiding and abetting statute, 18 U.S.C. §2, states that a person who furthers — more specifically, who "aids, abets, counsels, commands, induces or procures"— the commission of a federal offense "is punishable as a principal." That provision derives from (though simplifies) common-law standards for accomplice liability. See, *e.g.*, *Standefer* v. *United States*, 447 U.S. 10, 14-19, 100 S. Ct. 1999, 64 L. Ed. 2d 689 (1980); *United States* v. *Peoni*, 100 F. 2d 401, 402 (CA2 1938) (L. Hand, J.) ("The substance of [§2's] formula goes back a long way"). And in so doing, §2 reflects a centuries-old view of culpability: that a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission. See J. Hawley & M. McGregor, Criminal Law 81 (1899).

134 S. Ct. at 1245.[4]

Watson correctly points out that 18 U.S.C. § 2(a) has its own elements, both *actus reus* and *mens rea*, distinct from the principal offense (PageID 1299). He also notes that the J&C

---

[4] Per *United States v. McGee,* Case No. 4:00-cr-105 (N.D. Okla., Mar. 1, 2001)(unreported, copy at ECF No. 162-1, PageID 1316-31), relied on by Watson, 18 U.S.C. § 2(a) defines an inchoate crime as compared with § 2(b) which defines a substantive crime   § 2(a) is a recodification of 18 U.S.C. § 550 (1909), which   was a codification of the common law principles of accomplice liability. *Id.* at PageID 1319, *citing United States v. Ruffin*, 613 F.2d 408, 421-22 (2nd Cir. 1979).

purports to adjudicate him guilty of violating 18 U.S.C. § 2 which contains two distinct offenses in §§ 2(a) and 2(b)(PageID 1300).

The Indictment in this case charges Watson and co-defendant Theron Lewis jointly in Count 2 with violation of 18 U.S.C. § 1951(a) and § 2 without specifying whether § 2(a) or 2(b) is intended (ECF No. 4, PageID 14-15). The Plea Agreement provides that Watson will "plead guilty to Count Two (conspiracy to interfere with commerce by robbery in violation of Title 18, United States Code, Section 1951(a)) of the indictment in this case." (ECF No. 102, PageID 928.) No mention is made of § 2.

During the plea colloquy, the prosecutor mentions only the Hobbs Act violation under 18 U.S.C. § 1951 (See, e.g., Transcript, ECF No. 127, PageID 1005). The Statement of Facts read into the record, to which Watson agreed, recited that Watson, Lewis, and a third party went to 1637 Harold Street in Dayton on April 3, 2007, to rob a drug dealer known as DKB Junior at gunpoint. There were six adult occupants present when they entered.

> The Defendant Keith A. Watson assumed the role sentry, securing the front door and guarding the three adult occupants, one male, three females, found located in the living room/kitchen area. In carrying out this role, he forced each of these three individuals to lie down on the floor while brandishing his handgun.

While Watson was on sentry duty, Lewis shot and killed DKB Senior, another person present, in the process of stealing drugs and drug proceeds. *Id.* at PageID 1012. Watson agreed these facts were true and he was offering to plead guilty because he was in fact guilty. *Id.* Judge Black then asked Watson "How do you wish to plead to the charge, the one charge, guilty or not guilty?" *Id.* at PageID 1013. Watson answered "Guilty." *Id.*

The Minute Entry from sentencing recounts that Watson had pled guilty to Count 2 and was sentenced on that count (ECF No. 116, PageID 955). The sentence was within the agreed range on the Plea Agreement and only one sentence was imposed.

The Judgment, however, upon Watson's plea of guilty to Count Two, purports to adjudicate him guilty of violating "18 U.S.C. § 1951(a) **and** § 2." (ECF No. 120, PageID 967.) However, it imposes only one sentence of 132 months. *Id.* at PageID 968.

Watson writes at some length in the Objections about 18 U.S.C. § 2(a)'s describing a "substantive" offense. The Magistrate Judge, however, agrees with *McGee, supra*, cited by Watson, that § 2(a) describes an "inchoate" offense, or, as Justice Kagan writes in *Rosemond*, it codifies the "common-law standards for accomplice liability." Section 2(b), in contrast, does describe a substantive offense. The Magistrate Judge also agrees with Watson that *Rosemond* should be given retroactive effect for those cases pending collateral review.

However, *Rosemond* does not entitle Watson to the relief he seeks – withdrawal of his guilty plea. The record makes clear that Watson agreed to plead guilty to a Hobbs Act violation, actually did plead guilty to a Hobbs Act violation, and was sentenced for a Hobbs Act violation. The Judgment should be amended to reflect the actual offense of conviction by striking any reference to 18 U.S.C. § 2.

In seeking to withdraw from the Plea Agreement, Watson reminds the Court that "[p]lea agreements are contractual in nature, so we use traditional contract law principles in interpreting and enforcing them." (Objections, ECF No. 144, PageID 1179, *citing United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006)). Watson continues:

> Contract law principles are clear as to the remedy for this blatant contract/plea breach. That being, because the contract/plea breach was at the hands of the United States and the undersigned victimized by the breach, having given up specific constitutional

10

> rights to obtain this newly discovered violated contract term, it is at
> the option of the party so injured, the undersigned movant
> instantly, to withdraw from the breached contract and terminate the
> plea, immediately.

*Id.* at PageID 1179-80. Watson cites no authority for this proposition in the Motion or the

Objections. Instead of permitting Watson to withdraw, the Court should give him what he

bargained for. *Santobello v. New York*, 404 U.S. 257 (1971). That is a judgment of conviction

for violating the Hobbs Act. Again, that can be accomplished by amending the Judgment.

**Conclusion**

Having considered the Objections, the Magistrate Judge respectfully recommends that

Watson be granted relief by filing an amended judgment which eliminates all reference to 18

U.S.C. § 2. In all other respects, the § 2255 Motion should be denied. Because reasonable

jurists would not disagree with this conclusion, Petitioner should be denied a certificate of

appealability and the Court should certify to the Sixth Circuit that any appeal would be

objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

July 7, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).